SCHROTH & SCHROTH
ROBERT E. SCHROTH, SR, ESQ. (SBN 103063)
ROBERT E. SCHROTH, JR, ESQ. (SBN 212936)
2044 First Avenue, Suite 200
San Diego, California 92101
Telephone: (619) 233-7521
Facsimile:  (619) 233-4516

Attorney for Defendant: MAGDALENA MAULEON

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

(Hon. William Q. Hayes)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No.:   07CR2882-BEN |
|   | ) Magistrate Case No.:   07CR1749-AJB |
| Plaintiff, | ) |
|   | ) **MEMORANDUM OF POINTS AND** |
| vs. | ) **AUTHORITIES IN SUPPORT OF** |
|   | ) **MAGDALENA MAULEON'S MOTIONS** |
| GUILLERMO BARRETO-ORTIZ (1), | ) |
| MAGDALENA MAULEON (2), | ) |
|   | ) |
| Defendant. | ) |

**I.**

**STATEMENT OF FACTS**[1]

On or about June 28, 2007, an Indictment was filed against Defendants, BARRETO and MAULEON alleging that they did knowingly and intentionally conspire with Consuelo Mauleon to manufacture 1,000 and more marijuana plants, a Schedule I Controlled Substance; in violation of Title 21, United States Code, Sections 841 (a) (1) and 846.  On July 17, 2007, Federal Agents executed a search warrant of the Defendant's home.  Agent Santana explained to

- 1 -

U. S. v. Barreto et. al.

MAULEON in Spanish that agents were executing a search warrant. MAULEON, who speaks no English, was moved to the couch in the family room with her children.

While agent Korte was obtaining biographical information from MAULEON, MAULEON made the following statements to Korte; she has been in the United States illegally for 16 years; all four of MAULEON's children were born in the United States and MAULEON is eight months pregnant. Agent Korte asked MAULEON what time her husband, Guillermo BARRETO, left for work and she replied 6:00 a.m. Prior to this questioning Mrs. MAULEON was never read her Miranda rights.

While agents were searching the residence, Korte asked Juvenile #2 if he knew of any guns in the house. Juvenile #2 said his dad had a "22" outside. Agent Korte asked Juvenile #2 to show him where the gun was. Juvenile #2 took agent Korte outside the kitchen door and pointed to a rifle on the roof. Agent Korte took Juvenile #2 back inside the residence. As Korte located two clear plastic bags and a white plastic bag containing green leafy substance (Exhibits 9a and 9b) in a cabinet underneath the television, Juvenile #2 made the unsolicited statement "that's the green stuff my dad sells."

Agent Korte then took Juvenile #2 outside and asked him where his dad keeps the green stuff. Juvenile #2 took Korte to the outbuilding adjacent to the residence and said he, Juvenile #5, his cousin Juvenile #1, and his mother help his dad "cut the green leaves off and put them in bags" inside the outbuilding. Agent Korte then asked Juvenile #2 where his dad gets the green things and he said he didn't know. Korte asked Juvenile #2 where his dad dries the green stuff and he said he would show agent Korte. Juvenile #2 took Korte outside to a large vegetable

---

[1] This statement of facts is taken from the criminal complaint, indictment and discovery provided by the government. Mr. Serna does not adopt these facts and reserves the right to challenge these facts at any future proceeding.

- 2 -

U. S. v. Barreto *et. al.*

garden and said his dad puts the green stuff in the garden and next to the trailer to dry. Agent Korte asked Juvenile #2 why his dad puts the green stuff in the garden and he responded "so nobody can see it." Juvenile #2 said he and Juvenile #5 help his dad dry the green stuff. Juvenile #2 further stated that three males, Albert, Brian and Kevin, come to the residence often and give his mom and dad a "little money" for the green stuff. Prior to this questioning, Juvenile #2 was never read his Miranda rights.

Prior to leaving the residence, agent Korte gave MAULEON a copy of the search warrant and a receipt of all the items seized. Agent Korte also explained to MAULEON that her husband, Guillermo BARRETO had been arrested and was going to be taken to jail.

## II.

### THIS COURT SHOULD ORDER PRESERVATION OF EVIDENCE AND PRODUCTION OF DISCOVERY

Mrs. MAGDALENA MAULEON moves this court for the production by the government of the following discovery and for the preservation of evidence. This request is not limited to those items that the prosecutor has actual knowledge of, but rather includes all discovery listed below that is "in the possession, custody, or control of any federal agency participating in the same investigation of the defendant." United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir.), cert. denied, 493 U.S. 858 (1989).

1. **Mrs. MAULEON's Statements.** The government must disclose:
   (a) copies of any written or recorded statements made by Mrs. MAULEON.
   (b) copies of any written record containing the substance of any statements made by Mrs. MAULEON; and:
   (c) the substance of any statements made by Mrs. MAULEON which the government intends to use, for any purpose, at trial. See Fed. R. Crim. P. 16(a)(1)(A).

2. **Arrest Reports, Notes and Dispatch Tapes.** The defense also specifically requests that all arrest reports, notes and dispatch or any other tapes that relate to the

1  circumstances surrounding his arrest or any questioning, if such reports have not already been
2  produced <u>in their entirety</u>, be turned over to him. This request includes, but is not limited to,
3  any rough notes, records, reports, transcripts or other documents in which statements of the
4  defendant or any other discoverable material is contained. This is all discoverable under Fed. R.
5  Crim. P.16(a)(1)(A); 16(a)(1)(B) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). <u>See also</u> <u>Loux v.
6  United States</u>, 389 F.2d 911 (9th Cir.1968). Arrest reports, investigator's notes, memos from
7  arresting officers, dispatch tapes, radio conversations between agents and/or law enforcement,
8  sworn statements, and prosecution reports pertaining to the defendant are available under Fed.
9  R. Crim.P.16(a)(1)(E) and Fed. R. Crim. P. 26.2. Preservation of rough notes is requested,
10 whether or not the government deems them discoverable.

11       3. **Any Information That May Result in a Lower Sentence Under The
12 Guidelines.** As discussed above, this information is discoverable under <u>Brady v. Maryland</u>,
13 373 U.S.83 (1963). This request includes any cooperation or attempted cooperation by the
14 defendant, as well as any information that could affect any base offense level or specific
15 offense, characteristic under Chapter Two of the Guidelines. Also included in this request is
16 any information relevant to a Chapter Three adjustment, a determination of the defendant's
17 criminal history, or any other application of the Guidelines.

18
19       4. **Mrs. MAULEON's Prior Record.** Mrs. MAULEON requests disclosure of her
20 prior record. See Fed. R. Crim. P. 16(a)(1)(B).

21       5. **Any Proposed 404(b) and (609) Evidence.** The government must produce evidence
22 of prior similar acts under Fed. R. Crim. Proc., 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In
23 addition, "upon request of the accused, the prosecution shall provide reasonable notice in
24 advance of trial of the general nature" of any evidence the government proposes to introduce
25 under Fed. R. Evid. 404(b) at trial. This applies not only to evidence which the government may
26 use as rebuttal. <u>United States v. Vega</u>, 1888 F. 3d 1150 (9th Cir. 1999). The defendant is entitled
27 to "reasonable notice" so as to "reduce surprise." Preclude "trial by ambush" and prevent the
28

"possibility of prejudice," Id., and he requests such notice at least two weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

  6. **<u>Evidence Seized.</u>** The defendant requests production of evidence seized as a result of any search. Fed. R. Crim. Proc. 16(a)(1)(C).

  7. **<u>Documents and Tangible Objects.</u>** Mrs. MAULEON requests the opportunity to inspect, copy, and photograph all documents and tangible objects which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to him. See Fed. R. Crim. P. 16(a)(1)(C). Specifically, Mrs. MAULEON requests that the government provide her with a copy of his statements made to any and all government agents, state or federal, which occurred prior to his arrest. This includes all reports prepared by any peace officer.

  8. **<u>Reports of Scientific Tests or Examinations</u>**. Mrs. MAULEON requests the reports of all tests and examinations which are material to the preparation of the defense or are intended for use by the government at trial. See Fed. R. Crim. P. 16(a)(1)(D). Mrs. MAULEON notes that no fingerprint analyses have been produced. If such analyses exist, Mrs. MAULEON requests a copy.

  9. **<u>Expert Witnesses.</u>** Mrs. MAULEON requests the name and qualifications of any person that the government intends to call as an expert witness. See Fed. R. Crim. P. 16(a)(1)(E). In addition, Mrs. MAULEON requests written summaries describing the bases and reasons for the expert's opinions. See id. This request specifically applies to any fingerprint and handwriting experts that the government intends to call.

  10. **<u>Brady Material.</u>** Mrs. MAULEON requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt or punishment.

- 5 -

U. S. v. Barreto *et. al.*

See Brady v. Maryland, 373 U.S. 83 (1963), Williams v. Taylor, 120 S.Ct. 1479 (2000), Strickler v. Greene, 527 U.S. 263 (1999). Mrs. MAULEON maintains that his police file constitutes Brady material and therefore it must be produced.

In addition, impeachment evidence falls within the definition of evidence favorable to the accused, and therefore Mrs. MAULEON requests disclosure of any impeachment evidence concerning any of the government's potential witnesses, including prior convictions and other evidence of criminal conduct. See United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976); Kyles v. Whitley, 514 U.S. 419 (1995). In addition, Mrs. MAULEON requests any evidence tending to show that a prospective government witness: (i) is biased or prejudiced against the defendant; (ii) has a motive to falsify or distort his or her testimony; (iii) is unable to perceive, remember, communicate, or tell the truth; or (iv) has used narcotics or other controlled substances, or has been an alcoholic.

11. **Request for Preservation of Evidence.** Mrs. MAULEON specifically requests the preservation of all physical or documentary evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to the arrest or the events leading to the arrest in this case.

12. **Witness Addresses.** Mrs. MAULEON requests the name and last known address of each prospective government witness. She also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness.

13. **Jencks Act Material.** Mrs. MAULEON requests production in advance of trial of all material discoverable pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid needless delays at pretrial hearings and at trial. This request includes any "rough" notes

taken by the agents in this case; these notes must be produced pursuant to 18 U.S.C. § 3500(e)(1). This request also includes production of transcripts of the testimony of any witness before the grand jury. See 18 U.S.C. § 3500(e)(3).

14. **Residual Request.**  Mrs. MAULEON intends by this discovery motion to invoke her rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. Mrs. MAULEON requests that the government provide her and her attorney with the above-requested material sufficiently in advance of trial.

15. **Evidence of Criminal Investigation of Any Government Witness.** The defense requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir. 1985).

16. **Evidence of Bias or Motive to Lie.** The defense requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony. Pennsylvania v. Ritchie, 480 U.S. 39 (1987); United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988).

17. **Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity.** The defendant requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988); Chavis v. North Carolina, 637 F.2d213, 224 (4th Cir. 1980).

18. **Name of Witnesses Favorable to the Defendant**. The defendant requests the name of any witness who made any arguably favorable statement concerning the defendant or

- 7 -

who could not identify her or was unsure of her identity, or participation in the crime charged. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968); Chavis v. North Carolina, 637 F.2d 213,223 (4th Cir. 1980); Jones v. Jago, 575 F.2d 1164,1168 (6th Cir. 1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1979), cert. denied,444 U.S. 1086 (1980).

19. **Statements Relevant to the Defense.** The defendant requests disclosure of any statement that may be"relevant to any possible defense or contention" that she might assert. United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982). This includes Grand Jury transcripts which are relevant to the defense motion to dismiss the indictment.

20. **Giglio Information**. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witness.

21. **Agreements between the Government and Witnesses**. The defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea bargain, even if no bargain was made or the advice not followed.

22. **Informants and Cooperating Witnesses**. The defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or

otherwise participated in the crime charged against the defendant. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. Rovariaro v. United States, 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

23. **Bias by Informants or Cooperating Witnesses**. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

24. **Personnel Records of Government Officers Involved in the Arrest**. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

25. **Training of Relevant Law Enforcement Officers**. Defendant requests copies of all written, videotaped or otherwise recorded policies or training instructions or manuals issued by all law enforcement agencies involved in the case ( United States Customs Service, Border Patrol, INS, Homeland Security, etc.) to their employees regarding: (a) the handling of vehicles suspected to be transporting contraband across the port of entry; (b) the referral to secondary inspection of the persons with in those vehicles; (c) the detention of individuals within those vehicles, including the proper means of obtaining consent to search and what constitutes consent to search; (e) the informing of suspects of their Constitutional rights; (f) the questioning of suspects and witnesses. Defendant also requests all written or otherwise attainable

information regarding the training of Customs agents at ports of entry in California to detect or discover narcotics and/or people in vehicles entering the United States, including any training offered to Border Patrol, INS, or officers of Homeland Security Department, by the DEA or other law enforcement agencies or individuals.

26. **Performance Goals and Policy Awards**. Defendant requests disclosure of information regarding standards used for measuring, compensating or reprimanding the conduct of all law enforcement officers involved in the case (Customs, Border Patrol, INS, etc.) to the extent such information relates to the detection of contraband. This request specifically includes information concerning performance goals, policy awards, and the standards used by Customs for commending, demoting, or promoting agents for their performance at the port of entry and their success or failure to detect illegal narcotics and/or people in general.

27. **Opportunity to Weigh, View and Photograph the Evidence Seized**. Defendant hereby requests an opportunity to view, photograph, and weigh any evidence allegedly confiscated in this case.

**II.**

**MOTION FOR SEVERANCE OF DEFENDANTS**

Rule 14 of the Fed. R. Crim. P. provides in pertinent part:

> If it appears that a defendant … is prejudiced by a joinder of defendants in an indictment … or by such joinder for trial together, the court may … warrant a severance of defendants or provide whatever other relief justice requires.

Defendant MAGDALENA MAULEON is entitled to severance because her defense will be so inconsistent and antagonistic between the codefendants that she will be denied a fair trial and, depending upon the suppression of statements and issues, complicated *Bruton* issues will

arise during a joint trial. At his arrest, codefendant BARRETO made several statements to law enforcement officers implicating Mrs. MAULEON.

Undoubtedly, it is the general rule that defendants who have been jointly indicted should be tried together in conspiracy cases. *United States v. Cross*, 928 F.2d 1030, 1036 (11th Cir. 1991). However, it is also the rule that "if it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants … **for trial together**, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." Fed. R. Crim. P. 14 (emphasis added.) Such severance decisions are committed to the sound discretion of this Court. *Zafiro v. United States*, 506 U.S. 538-39 (1993); *Cross*, 938 F.2d at 1036. This Court may sever codefendants' trials if it concludes that the "prejudice that a defendant may suffer from a joint trial" is greater than the "interest in judicial economy and efficiency." *Id.*; Fed. R. Crim. P. 14. However, it is noteworthy, that while relevant, "considerations of judicial economy cannot be elevated to the point where they impair a defendant's right under the Constitution or Fed. R. Crim. P. 14." *Cross*, 928 F.2d at 1037 n.16 (quoting *United States v. Pepe*, 747 F2d 632, 651 (11th Cir. 1984); *see also Taylor v. Singletary*, 122 F.3d 1390, 1393 (11th Cir. 1997) (judicial economy must not come before a defendant's right to a fair trial.)

In *Zafiro*, the Supreme Court set forth two instances where severance is required: where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable decision about guilt or innocence." *Zarifo,* 506 U.S. at 539. Here, the evils contemplated by *Zafiro* exist: (1) Mrs. MAULEON's Sixth Amendment trial rights will be compromised because if tried jointly with her codefendants she will have to present an antagonistic defense, (2) there is also a great risk that

the jury will not make a reliable decision about guilt of innocence. Therefore, severance is proper under *United States v. Tootick*, 952 F.2d 1078 (9th Cir. 1991). While it is true that "[m]ere inconsistency in defense positions is insufficient" to warrant severance, *Tootick*, 952 F.2d at 1081, the "probability of reversible prejudice increases as the defenses move beyond the merely inconsistent to the antagonistic." *Id.*; *Zafiro*, 506 U.S. at 542, 113 S.Ct. 933 (Stevens, J., concurring in the judgment). When defendants present mutually exclusive defenses, the jury often cannot "assess the guilt or innocence of the defendants on an individual and independent basis." *Tootick*, 952 F.2d at 1082; *see also United States v. Mayfield*, 189 F.3d 895 (9th Cir. 1999) (same).

Additionally, the Confrontation Clause guarantees to a criminal defendant the right to cross examine witnesses against her. *Pointer v. Texas*, 380 U.S. 400, 404 (1965). Thus, in joint trials, the pretrial confession of one defendant which implicates another cannot be introduced unless the confessing defendant takes the stand, permitting cross-examination. *Cruz v. New York*, 481 U.S. 186, 187 (1987). In *Bruton v. United States*, 391 U.S. 123 (1968), the Court decided that not even cautionary instructions to jurors to only consider a confession only against its maker in a joint trial sufficiently protect a defendant because:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of the codefendant, who stands accused side-by-side with the defendants are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect. …

*Id.* at 135-36. More recently, in *Lilly v. Virginia*, 119 S. Ct. 1887, 1892 (1999), the Supreme Court refused to permit the prosecution to circumvent *Bruton* by relying on the "statement against penal interest" hearsay exception. Even though the accomplice's confession was indeed

statement against penal interest, its admission was still a confrontation clause violation because accomplice's statements are "inherently unreliable" as well as "presumptively unreliable" and "traditionally viewed with special suspicion." *Lilly*, 199 S. Ct. at 1896.

The government has chosen to try these defendants jointly and there are consequences to this decision. However, these can be avoided by severing defendants.

## III.

## MOTION FOR SUPPRESSION OF STATEMENTS

### A. MRS. MAULEON IS ENTITLED TO AN EVIDENTIARY HEARING TO DETERMINE WHETHER HER STATEMENTS, IF ANY, WERE VOLUNTARILY MADE AND ELICITED IN COMPLIANCE WITH MIRANDA.

The Supreme Court has held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Id.* S*ee also Orozco v. Texas*, 394 U.S. 324, 327 (1969).

When interrogation takes place without the presence of an attorney, and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived her privilege against self-incrimination and her right to retained or appointed counsel. *Miranda,* 384 U.S. at 475. A waiver of the right to remain silent and the right to counsel must be made knowingly, intelligently and voluntarily in order to be effective. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). The standard of proof for a waiver of this constitutional right is high. *Miranda*, 384 U.S. at 475. *See United States v. Heldt*, 745 F.2d

1275, 1277 (9th Cir. 1984) (the burden on the government is great; the court must indulge every reasonable presumption against waiver of fundamental constitutional rights.)

The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background experience, and conduct of the accused. *Edwards v. Arizona*, 451 U.S. 477, 472 (1981).

The government in the present case has the burden of proving that Mrs. MAULEON was read her *Miranda* rights and intelligently and voluntarily waived those rights in all situations where Mrs. MAULEON reasonably believed that she was not free to leave. *See United States v. Estrada-Lucas*, 651 F.2d 1261, 1265 (9th Cir. 1980).

Even when the procedural safeguards of *Miranda* have been satisfied, a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession. *Jackson v. Denno*, 378 U.S. 368, 387 (1964). The government bears the burden of proving that a confession is voluntary by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 483 (1972); *see also* 18 U.S.C. § 3501(a).

A statement must be the product of a rational intellect and free will to be voluntary. *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne, the totality of the circumstances must be considered. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). A confession is deemed involuntary whether coerced by physical intimidation or psychological pressure. *Townsend v. Sain*, 372 U.S. 293, 307 (1962). It must not be extracted by any sort of threats of violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influences. *United States v.*

*Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981).  A hearing is therefore required to determine whether the statements made by Mrs. MAULEON were voluntary.[2]

### III.

### MOTION TO FILE ADDITIONAL MOTIONS

At this time the defense is trying to make contact with exculpatory witnesses whose whereabouts are unknown.  It is conceivable the defendant will file additional motions relating to prosecutorial delay resulting in unfair prejudice to the defendant; as well as other applicable motions, including suppression motions. Lastly, given limited discovery has been produced, additional motions maybe necessary once counsel has had the opportunity to review same.

### IV.

### JOINDER IN CO-DEFENDANTS' MOTIONS

Pursuant to Criminal Local Rule 47.1(d), defendant, Mrs. MAGDALENA MAULEON, hereby joins the in limine motions filed by her co-defendants.  Specifically, she joins in the Discovery Motion filed by Guillermo Barreto-Ortiz.

### V.

### CONCLUSION

For the foregoing reasons, Mrs. MAGDALENA MAULEON, respectfully requests that the Court grant the motions made by the Defendant.

Respectfully Submitted this 19th day of November, 2007.          **SCHROTH & SCHROTH**

---

[2] It is unclear from the discovery if the defendant made any statements.  Therefore, the motion is being filed as a prophylactic measure.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                    By:    s/ Robert Schroth Sr.
                         ROBERT E. SCHROTH, SR,
                         Attorney for Defendant